UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DIAMOND D CONSTRUCTION CORP.

                            Plaintiff,

               v.

NEW YORK STATE DEPARTMENT OF LABOR,
 ("DOL") Bureau of Public Works,
JAMES J. McGOWAN, as Former Commissioner
 of Labor of the State of New York,
DEPARTMENT OF AUDIT AND CONTROL,
 State of New York,
MICHAEL O'CONNELL, Department of Audit and
 Control, State of New York,
COUNTY OF ERIE,
NANCY NAPLES, Erie County Comptroller,
RONALD KINN, individually and in his capacity as
 Public Work Wage Investigator employed by the DOL,
DALE STANLEY, individually and in his capacity as
 an employee of the DOL,
BRIAN ROBINSON, individually and in his capacity
 as Senior Public Work Wage Investigator employed
 by the DOL,
LINDA ANGELLO, Commissioner of Labor of the
 State of New York,

                          Defendants.

**REPORT
and
RECOMMENDATION**

--------------------------------

**DECISION
and
ORDER**

**00-CV-335C(F)**

---

HENRY W. KILLEEN, and
KILLEEN & KILLEEN,

                          Plaintiffs,

               v.

JOSEPH M. DiPIZIO,

                          Defendant.

**03-CV-377C(F)**

APPEARANCES:          KILLEEN & KILLEEN
Former Attorneys for Plaintiff Diamond D
  Construction Corp.
  and Attorneys for Plaintiff Killeen
HENRY W. KILLEEN, III, of Counsel
4214 North Buffalo Street
Orchard Park, New York 14127

HISCOCK & BARCLAY LLP
Attorneys for Plaintiff Diamond D
  Construction Corp.
TIMOTHY J. WALKER, of Counsel
1100 M&T Center
Three Fountain Plaza
Buffalo, New York 14203-1486

NAPIER, FITZGERALD and KIRBY, LLP
Former Attorneys for Plaintiff Diamond D
  Construction Corp.
BRIAN P. FITZGERALD, of Counsel
509 Liberty Building
Buffalo, New York 14202

GREENAN LAW OFFICE
Attorneys for Plaintiff Diamond D
  Construction Corp.
TIMOTHY J. GREENAN, of Counsel
3755 Seneca Street
P.O. Box. 188
West Seneca, New York 14224-0188

ELIOT L. SPITZER
New York State Attorney General
Attorney for State Defendants
JAMES W. VERSOCKI and
SETH MARK KUPFERBERG
Assistant Attorneys General, of Counsel
120 Broadway, 26th Floor
New York, New York 10271

## JURISDICTION

These actions were referred to the undersigned by Honorable John T. Curtin on

January 27, 2004 (Doc. No. 247, 00-CV-335C(F), and Doc. No. 10, 03-CV-377C(F))

("Referral Orders"), "to hear and determine all matters pertaining to plaintiff's motion for

interim attorney's fees and Mr. Killeen's charging lien," and "to conduct all proceedings

deemed necessary for submission of a report and recommendation for the disposition

of related matters raised by the motions and applications pending in No. 03-CV-337C,"

Referral Order (00-CV-335C(F), Doc. No. 247) at 1-2, and "to conduct all proceedings

necessary for submission of a report and recommendation for the disposition of the

matters raised by the defendant's motion to dismiss and plaintiff's cross-motion to

consolidate this case [03-CV-377C(F)] with . . . [00-CV-335C(F)]," Referral Order (03-

CV-377C(F), Doc. No. 10) at 1.  Accordingly, 00-CV335C(F) is presently before the

court on Diamond D Construction Corp.'s motion filed on March 23, 2001 (00-CV-

335C(F), Doc. No. 102), for interim attorney fees, and Henry W. Killeen, III's ("Killeen")

motions filed on May 16, 2003 (00-CV-335C(F), Doc. No. 173) for the court to

determine the amount of an attorney's charging lien in that action, and on July 11, 2003

(00-CV-335C(F), Doc. No. 188) to strike, and 03-CV-377C(F) is before the court on

Joseph M. DiPizio's motion filed on April 21, 2004 (03-CV-377C(F), Doc. No. 3) to

dismiss, and Killeen's and Killeen & Killeen's cross-motion filed on November 21, 2003

(03-CV-377C(F), Doc. No. 6) to consolidate cases.[1]

---

[1] Although these two instant actions, 00-CV-335C(F) and 03-CV-377C(F), are related, they have
not been consolidated.  Nevertheless, the court treats the motions pending in both actions in the same
Report and Recommendation and Decision and Order, consistent with Judge Curtin's Referral Orders,
and, therefore, separate originals of this Report and Recommendation and Decision and Order have been
filed in each action.  Furthermore, as the dispositive and nondispositive motions pending in both actions
are related, the court addresses all pending motions together in the interests of clarity and judicial
economy.

## **BACKGROUND**

Plaintiff Diamond D Construction Corp. ("Diamond D") commenced its § 1983

action, No. 00-CV-335C(F) ("the § 1983 action") on April 12, 2000, against Defendants

New York State Department of Labor Bureau of Public Works ("DOL"), James J.

McGowan, as Former Commissioner of Labor of the State of New York, Department of

Audit and Control, State of New York, Michael O'Connell, Department of Audit &

Control, State of New York, and DOL employees Ronald Kinn, Public Work Wage

Investigator, Dale Stanley, and Brian Robison, Senior Public Work Wage Investigator,

and Linda Angello, Commissioner of Labor of the State of New York (together, "State

Defendants" or "Defendants"). Also named as Defendants were the County of Erie

("the County"), and Nancy Naples, in her official capacity as Erie County Comptroller

(together, "County Defendants").[2] At issue in the § 1983 action are certain withholding

notices the DOL filed with regard to three road construction projects with the New York

State Department of Transportation ("the DOT") and the County for which Diamond D is

the general contractor ("the DOL's withholding notices"), based on Diamond D's alleged

underpayment of wages as determined by the DOL following an investigation into the

matter. The DOL's withholding notices resulted in the withholding of a total of $ 1.4

million in payments otherwise owed to Diamond D pursuant to Diamond D's contracts

with the DOT and the County governing the three road construction projects. Diamond

D alleges that the DOL's investigation into the matter was conducted in bad faith and

---

[2] By Order filed January 15, 2003 (Doc. No. 157), all causes of action against the County
Defendants were dismissed. Accordingly, a Judgment entered on January 16, 2003 (Doc. No. 158),
dismissed the action as against the County Defendants.

4

that the failure to promptly hold a hearing upon issuing the withholding notices has created a cash crisis, thereby jeopardizing Diamond D's continued viability, and, as such, violated Diamond D's constitutional right to procedural due process.  Diamond D also moved on April 12, 2000 for a preliminary injunction and an expedited hearing (Doc. No. 2).

On June 29, 2000, Judge Curtin denied Diamond D's motion for a preliminary injunction (00-CV-335C(F), Doc. No. 34), *Diamond D Const. Corp. v. New York State Dep't of Labor Bureau of Public Works*, 105 F.Supp.2d 167 (W.D.N.Y. 2000) ("*Diamond D I*"). Answers to the Complaint were filed on July 6, 2000 by the State Defendants (00-CV-335C(F),  Doc. No. 35) and the County Defendants (00-CV-335C(F), Doc. No. 36). On July 14, 2000, Diamond D moved ( 00-CV-335C(F), Doc. No. 39) for reconsideration of the June 29, 2000 Order denying the request for injunctive relief and, by Order filed August 17, 2000 (00-CV-335C(F), Doc. No. 48), *Diamond D Constr. Corp. v. New York State Dep't of Labor Bureau of Public Works*, 110 F.Supp.2d 200 (W.D.N.Y. 2000) ("*Diamond D II*"), Judge Curtin held the action was not barred by the Eleventh Amendment, but that issues of fact precluded the court's determination as to whether the "bad faith" exception to the principles of *Younger v. Harris*, 401 U.S. 37 (1971) ("the *Younger* abstention doctrine"),[3] precluded the dismissal of Diamond D's action for denial of substantive due process.  A hearing on the application of the bad faith exception to the *Younger* abstention doctrine was conducted before Judge Curtin over

---

[3] The *Younger* abstention doctrine generally requires federal courts to refrain from enjoining a state administrative proceeding where: (1) there is an ongoing administrative proceeding; (2) there is a state interest in proceeding with the matter; and (3) the party has had an opportunity for judicial review of the administrative agency's actions. *Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626-27 (1986)).

5

six days, including August 22, 23 and 24, and September 5, 6 and 12, 2000. In an

Order filed January 5, 2001 (00-CV-335C(F), Doc. No. 81) *Diamond D Constr. Corp. v.*

*New York State Dep't of Labor Bureau of Public Works*, 142 F.Supp.2d 377 (W.D.N.Y.

2001) (*"Diamond D III"*), Judge Curtin granted Diamond D's motion for a preliminary

injunction, thereby enjoining the DOL's administrative proceedings, and directing the

DOL to withdraw and rescind the DOL's withholding notices filed with the DOT and the

DPW.

On January 16, 2001, the DOL moved (00-CV-335C(F), Doc. No. 84), for a

security bond and a partial stay allowing certain of the DOL's withholding notices to

remain in place pending the State Defendants' appeal of the preliminary injunctive relief

granted on January 5, 2001, to the Second Circuit Court of Appeals, and also filed a

Notice of Appeal to the Second Circuit (00-CV-335C(F), Doc. No. 88). Judge Curtin, by

order filed January 17, 2001 (00-CV-335C(F), Doc. No. 89), granted the motion for a

partial stay, but denied the motion for a security bond.

On March 23, 2001, while the State Defendants' appeal was pending before the

Second Circuit, Diamond D moved for an award of interim attorney fees as a prevailing

party pursuant to 42 U.S.C. § 1988 (00-CV-335C(F), Doc. No. 102). The motion was

accompanied by the Affirmations of Killeen (00-CV-335C(F), Doc. No. 103) ("Killeen

Affirmation"), Timothy J. Greenan, Esq. ("Greenan") (00-CV-335C(F), Doc. No. 104)

("Greenan Affirmation"), both filed on March 23, 2001, and Brian P. Fitzgerald, Esq.

("Fitzgerald") (00-CV-335C(F), Doc. No. 106) ("Fitzgerald Affirmation"), filed on April 5,

2001. On May 25, 2001, County Defendants filed the Affidavit of Assistant County

Attorney George Michael Zimmerman in Opposition to Plaintiff's Motion for Interim

Attorney Fees (00-CV-335C(F), Doc. No. 109).  On May 29, 2001, State Defendants

filed in opposition to the motion for interim attorney fees State Defendants' Response to

Plaintiff's Motion for Interim Attorney Fees (00-CV-335C(F), Doc. No. 110) ("State

Defendants' Memorandum"), and the Declaration of Assistant Attorney General Seth

Kupferberg in Support of State Defendants' Response to Plaintiff's Motion for Interim

Attorneys' Fees (00-CV-335C(F),  Doc. No. 111) ("Kupferberg Declaration").  On July 9,

2001, Diamond D filed a Reply to Defendants' Response to Plaintiff's Motion for Interim

Attorneys Fees (00-CV-335C(F),  Doc. No. 116) ("Diamond D's Reply"), and the

Supplemental Affirmation of Henry W. Killeen, III, Esq. (00-CV-335C(F), Doc. No. 117)

(Supplemental Killeen Affirmation").  By Order filed July 16, 2001 (00-CV-335C(F), Doc.

No. 119), Judge Curtin held Diamond D's motion for interim attorney fees in abeyance

pending the Second Circuit Court of Appeals' decision on the State Defendants' appeal

of the court's grant of Diamond D's request for a preliminary injunction.

By Opinion and Order filed August 27, 2002 (00-CV-335C(F), Doc. No. 125), the

Second Circuit vacated Judge Curtin's Order of January 5, 2001, granting Diamond D's

request for injunctive relief, on the basis that no exception to the *Younger* abstention

doctrine applied in this case and, as such, this court was without jurisdiction to entertain

Diamond D's request for injunctive relief.  *Diamond D Construction Corp. v. McGowan*,

282 F.3d 191, 193 (2d Cir. 2002) ("*Diamond D IV*").[4]  Accordingly, the preliminary

injunction was vacated and the matter remanded for further proceedings on Diamond

---

[4] Although the certified copy of the mandate in *Diamond D IV* was not filed in this court until
August 27, 2002, the published copy of *Diamond D IV* indicates it was decided by the Second Circuit on
March 1, 2002.  Additionally, the certified copy filed on August 27, 2002 (00-CV-335C(F), Doc. No. 125) is
a second amended order, with earlier certified copies filed on August 6, 2002 (00-CV-335C(F), Doc. No.
121) and August 14, 2002 (00-CV-335C(F), Doc. No. 122).

D's remaining damages claim. *Diamond D IV*, at 202.

On December 12, 2002, Fitzgerald moved to withdraw as counsel to Diamond D. (00-CV-335C(F), Doc. No. 144). The motion was granted on January 7, 2003 (00-CV-335C(F), Doc. No. 154).

On May 9, 2003, Killeen and his law firm, Killeen & Killeen, filed a Complaint seeking an award of attorney fees from DiPizio in connection with Killeen's and the law firm's representation of Diamond D in the § 1983 action on the basis of *quantum meruit*, thereby commencing a new action, 03-CV-377C(F) ("the *quantum meruit* action"). On May 16, 2003, Killeen filed, in the § 1983 action, a motion (00-CV-335C(F), Doc. No. 173) to withdraw as Diamond D's counsel of record, to determine the amount of an attorney's charging lien under New York Judiciary Law § 475 (McKinney 1983) ("§ 475"), and to enter judgment in the amount of the lien against Diamond D and Diamond D's president and principal, Joseph M. DiPizio ("DiPizio"). In support of the motion, Killeen filed on May 16, 2003, under seal, the Affirmation of Henry W. Killeen, III (00-CV-335C(F), Doc. No. 174) ("Second Killeen Affirmation").

On June 23, 2003, DiPizio filed a motion to dismiss the *quantum meruit* action for improper service and lack of jurisdiction. (03-CV-377C(F), Doc. No. 3). The motion was supported by the attached Affirmation of Joseph M. DiPizio in Support of Motion to Dismiss ("DiPizio Affirmation Supporting Motion to Dismiss").

On June 24, 2003, Diamond D filed under seal in the § 1983 action the Affirmation of Joseph M. DiPizio (00-CV-335C(F), Doc. No. 179) ("DiPizio Affirmation"), opposing Killeen's motion to withdraw and to determine the amount of an attorney's charging lien. On June 24, 2003, Greenan filed under seal the Affirmation of Timothy J.

8

Greenan, Esq. (00-CV-335C(F), Doc. No. 181) ("Greenan Affirmation"), in response to

Killeen's motion to withdraw as counsel to Diamond D and application to the court to

enforce a charging lien and enter judgment in the amount of the lien.  In further support

of Killeen's motion to withdraw and for the court to determine the amount of an

attorney's charging lien, Killeen filed, under seal, on July 11, 2003, the Reply

Affirmation of Henry W. Killeen, III in Support of Motion to Withdraw as Counsel of

Record (00-CV-335C(F), Doc. No. 183), the Affirmation of Allithea A. Killeen (00-CV-

335C(F), Doc. No 184) ("Allithea Killeen Affirmation"), and the Affirmation of Anna Marie

Richmond, Esq. (00-CV-335C(F), Doc. No. 185) ("Richmond Affirmation").  On July 11,

2003, Greenan filed, under seal, the Reply Affirmation of Timothy J. Greenan (00-CV-

335C(F), Doc. No. 187) ("Greenan Reply Affirmation"), in further opposition to Killeen's

request for a charging lien.  On July 11, 2003, Killeen filed, under seal, a motion to

strike the Greenan Affirmation, (00-CV-335C(F), Doc. No. 188) ("Motion to Strike"),

asserting that Greenan "is purporting to act both as a fact witness and as an advocate

for Mr. DiPizio," in violation of Disciplinary Rule 5-102 of the Code of Professional

Responsibility, N.Y. Judiciary Law Appendix (McKinney 2003).  Motion to Strike at 2.

DiPizio, on July 11, 2003, filed the Supplemental Affirmation of Joseph M. DiPizio (00-

CV-335C(F), Doc. No. 189) ("Supplemental DiPizio Affirmation"), in further opposition to

Killeen's motion for a charging lien.  On July 15, 2003, Judge Curtin granted Killeen's

motion to withdraw as counsel of record to Diamond D without prejudice to Killeen's

interests and rights with respect to the pending motion for interim attorney's fees; Judge

Curtin also deferred action on Killeen's motion for a charging lien "until an appropriate

time at or near the conclusion of the case."  July 15, 2003 Order (00-CV-335C(F), Doc.

9

No. 191) at 2.  On August 8, 2003, Killeen filed under seal supplemental papers in

further support of his motion for a charging lien.  (00-CV-335C(F), Doc. No. 192 (Killeen

Letter Dated July 22, 2003), and 00-CV-335C(F), Doc. No. 193 (Supplemental Filing in

Support of Motion to Withdraw)).

On August 6, 2003, Timothy J. Walker, Esq., ("Walker") appeared on behalf of

Diamond D, filing a notice of appearance for Diamond D on August 8, 2003 (00-CV-

335C(F), Doc. No. 196).  Thereafter, Walker has represented Diamond D in the § 1983

action.  DiPizio is, at present, proceeding *pro se* in the *quantum meruit* action, 03-CV-

377C(F).

On September 25, 2003, Judge Curtin denied Diamond D's motion for interim

attorney fees pursuant to § 1988 (00-CV-335C(F), Doc. No. 102) without prejudice to

renew the motion at an "appropriate time."  Order filed September 25, 2003 (00-CV-

335C(F), Doc. No. 210).[5]

On November 21, 2003, Killeen filed in the *quantum meruit* action, a cross-

motion (03-CV-377C(F), Doc. No. 6), to consolidate the *quantum meruit* action with the

§ 1983 action, 00-CV-335C(F).  Killeen also filed on November 21, 2003, a

Memorandum in Opposition to Defendant's Motion to Dismiss and in Support of

Plaintiffs' Cross-Motion to Consolidate (03-CV-377C(F), Doc. No. 7) ("Memorandum in

Support of Consolidation").

_____

[5] Although the record does not indicate that Diamond D ever renewed the motion for interim
attorney fees (00-CV-335C(F), Doc. No. 102), Killeen, on May 28, 2004, filed further papers in support of
such motion (00-CV-335C(F), Doc. No. 275).  Accordingly, the court considers that Judge Curtin's Order
of January 27, 2004, referring Case No. 00-CV-335C(F) and Case No. 03-CV-377C(F) to the undersigned
for report and recommendation of "all matters pertaining to plaintiff's motion for interim attorney's fees and
Mr. Killeen's charging lien" (underlining added), *sua sponte* renewed the motion.

On December 17, 2003, an Amended and Supplemental Complaint was filed in the § 1983 action (00-CV-335C(F), Doc. No. 231).

Killeen filed on April 21, 2004, the Supplemental Declaration of Henry W. Killeen, III, Esq., in Support of Motion for Judgment Pursuant to Judiciary Law § 475 (00-CV-335C(F), Doc. No. 262) ("Supplemental Killeen Affidavit Supporting Charging Lien"), and the Supplemental Memorandum of Law in Support of Motion for Judgment Pursuant to Judiciary Law § 475 (00-CV-335C(F), Doc. No. 263) ("Supplemental Memorandum Supporting Charging Lien"). On May 14, 2004, Killeen filed a Reply Memorandum in Support of Motion for Interim Relief and Motion for Judgment Pursuant to Judiciary Law § 475 (00-CV-335C(F), Doc. No. 271)[6] ("Killeen Reply Memorandum").

On May 28, 2004, Killeen filed the Reply of Killeen & Killeen Concerning Diamond D's Motion for Interim Award of Attorney Fees Pursuant to 42 U.S.C. § 1988 (00-CV-335C(F), Doc. No. 275) ("Killeen Plaintiffs' Supplemental Reply"), the Supplemental Declaration of Henry W. Killeen, III, Esq., in Support of Motion for Attorneys Fees Pursuant to 42 U.S.C. § 1988 (00-CV-335C(F), Doc. No. 277) ("Second Supplemental Killeen Affirmation"), and the Affirmations of Anna Marie Richmond, Esq. (00-CV-335C(F), Doc. No. 279) ("Richmond Affirmation") and David L. Cook, Esq. (00-CV-335C(F), Doc. No. 281) ("Cook Affirmation").

Oral argument was deemed unnecessary.

Based on the following, Diamond D's motion for an interim award of attorney's

---

[6] The reference to "Interim Relief" refers to another motion for additional injunctive relief that was filed on April 19, 2004 (00-CV-335C(F), Doc. No. 261), which was later withdrawn and, thus, is no longer before this court. *See* July 8, 2004 Minute Entry, 00-CV-335C(F), Doc. No. 293.

fees pursuant to § 1988 (00-CV-335C(F), Doc. No. 102), should be DENIED; Killeen's

motion for the court to determine the amount of an attorney's charging lien pursuant to

New York Judiciary Law § 475 (00-CV-335C(F), Doc. No. 173), should be DENIED

without prejudice; Killeen's motion to strike the affidavit of Timothy J. Greenan, Esq.

(00-CV-335C(F), Doc. No. 188), is DISMISSED as moot; Defendant DiPizio's motion to

dismiss (03-CV-377C(F), Doc. No. 3) should be DENIED in part and GRANTED in part;

and Plaintiffs Killeen's and Killeen & Killeen's motion to consolidate (03-CV-377C(F),

Doc. No. 6) is DISMISSED as moot.


## FACTS[7]

Plaintiff Diamond D Construction Corp. ("Diamond D"), is a construction

company deriving much of its revenue from public contracts for road construction,

including recent contracts for which Diamond D served as general contractor for three

road construction projects in the western New York area, and which are the subject of

the instant litigation.  Joseph M. DiPizio ("DiPizio") is the President and principal of

Diamond D.  The New York State Department of Transportation ("DOT") was the

sponsoring agency for two of the projects and the Erie County Department of Public

Works ("DPW") sponsored the third project.  In 1997, the DOL commenced an

investigation in response to written complaints alleging Diamond D's underpayment of

wages.  In April 1998, Diamond D retained Fitzgerald to represent Diamond D in

connection with the investigation.  In October 1998, upon concluding its investigation,

---

[7] Taken from the pleadings and motion papers filed in this action.

the DOL estimated that Diamond D had underpaid wages for the projects totaling $ 700,000, accrued interest on the underpaid wages was $470,000, and civil penalties of $ 290,000 and, accordingly, issued, pursuant to N. Y. Labor Law § 220(3-a)(c), the DOL's withholding notices on the three projects in the aggregate amount of more than $ 1.4 million.  Because of the DOL's withholding notices, Diamond D was unable to receive the $ 1.4 million to which it was otherwise entitled upon completing the three local road construction projects, and Diamond D's insurer refused to bond future projects until Diamond D resolved the DOL's withholding notices jeopardizing Diamond D's ability to continue its business operations.  Diamond D then sought legal assistance in resolving the DOL's withholding notices, maintaining that the DOL failed to properly conduct its investigation into Diamond D's alleged wage underpayment.  Following the filing of the DOL's withholding notices, Fitzgerald filed two applications in New York State Supreme Court for permission to post bonds on Diamond D's behalf in an attempt to discharge the initial $ 100,000 withheld by the DOL.  In 1999, Fitzgerald also initiated an Article 78 proceeding challenging under state law the DOL's withholding notices.

At some unspecified time in 1999, based on the complexity of the issues presented by the DOL's withholding notices and the substantial amount of time required to defend Diamond D's interests, Fitzgerald sought assistance in the matter from Greenan who had previously represented Diamond D in real estate transactions and zoning issues.  When Fitzgerald and Greenan determined additional legal assistance was needed with regard to the federal constitutional issues Diamond D believed were raised by the DOL's actions, DiPizio consulted with Patrick J. Maxwell, Esq., about resolving the DOL's withholding notices.  However, Maxwell required a $ 10,000

13

retainer fee and DiPizio, citing Diamond D's severe cash limitations, chose not to retain

Maxwell to represent Diamond D.  DiPizio then sought the assistance of Killeen and his

law firm, Killeen & Killeen ("Killeen & Killeen" or "the law firm").  Killeen advised DiPizio

that the proposed federal civil rights action would probably cost $ 25,000, that Killeen &

Killeen expected to be paid in accordance with its standard hourly rates, plus

disbursements, but that Killeen was willing to await payment until the DOL's withholding

notices were resolved and the withheld monies were disbursed.  DiPizio maintains that

he made clear to Killeen that Diamond D would be unable to pay attorney fees,

regardless of whether DOL's withholding notices were removed, absent a favorable

decision on Diamond D's request for attorney fees pursuant to the fee-shifting provision

for federal civil rights action, *i.e.*, 42 U.S.C. § 1988.

On March 25, 2000, Killeen and the law firm were designated by Diamond D as

its counsel for purposes of the expected federal action, although Fitzgerald and

Greenan continued to assist in the matter.  With Killeen & Killeen acting as lead

counsel, Diamond D filed the instant federal civil rights action, 00-CV-337C(F), on April

21, 2000, along with a request for a preliminary injunction to enjoin the DOL's

administrative proceedings and direct the DOL to withdraw and rescind the DOL's

withholding notices.

After initially denying Diamond D's motion for preliminary injunctive relief Judge

Curtin subsequently, on January 5, 2001, granted the motion on the basis that the bad

faith and extraordinary circumstances exceptions to the *Younger* abstention doctrines

were established, enjoined the DOL's administrative proceedings, and directed the DOL

to withdraw and rescind the DOL's withholding notices filed with the DOT and the DPW.

*Diamond D III*, 142 F.Supp.2d 377. As noted, on appeal the Second Circuit vacated, on March 1, 2002, the preliminary junction on the ground that Diamond D had failed to establish either the bad faith or extraordinary circumstances exception to the *Younger* abstention doctrine and, as such, the district court was without jurisdiction over the request for injunctive relief. *Diamond D IV*, 282 F.3d at 193. The Second Circuit therefore remanded the action for further proceedings on the remaining damages issue as pleaded in the case. *Id.* at 202.

In April 2003, the DOL filed new withholding notices against Diamond D which reduced the withheld amounts by $ 900,000. The DOL has since released all the withheld funds and Diamond D and DiPizio have continued to refuse to pay attorney fees to the attorneys, Killeen & Killeen, Fitzgerald and Greenan, representing Diamond D in the § 1983 action. DiPizio maintains that he made it clear to Killeen that Diamond D would not be able to pay any attorney fees associated with the § 1983 action unless Diamond D was considered a "prevailing party" entitled to an award of attorney fees pursuant to the civil rights statute's fee-shifting provision, 42 U.S.C. § 1988(b), and that a successful § 1988 motion would be the sole source of any fees for attorney services in the action. Although Killeen does not deny that he never had DiPizio execute a retainer agreement, Killeen insists that he did not agree to represent Diamond D on a contingency fee basis, *i.e.*, that Diamond D would be required to pay his attorneys' fees in connection with the § 1983 action only if Diamond D succeeded in the § 1983 action and, thus, was entitled to an award of attorney's fees pursuant to § 1988. DiPizio further maintains that he was never advised of the mounting attorney fees and was never presented a bill from any of his attorneys until July 2002, after the Second Circuit

15

overturned Judge Curtin's ruling in Diamond D's favor, which indicated attorney fees for

Killeen, the law firm, Fitzgerald and Greenan in excess of $ 770,000 were due.  DiPizio

asserts that neither he, nor Diamond D is able to pay the bill and Killeen's insistence on

collecting the fee, if successful, will likely result in the demise of Diamond D and

DiPizio's personal financial ruin.


## DISCUSSION

1.    **§ 1983 Action**

Diamond D seeks to recover attorney fees accrued in connection with the § 1983

under both a motion pursuant to § 1988 for an award of attorney's fees as a prevailing

party in a § 1983 action.  Killeen and his law firm, Killeen & Killeen, have separately

filed a motion requesting the court to determine the amount of and enforce an

attorney's charging lien against the proceeds of the § 1983 action pursuant to New York

Judiciary Law § 475 (McKinney 1983) ("§ 475").


A.    **Attorney Fees Pursuant to 42 U.S.C. § 1988**

Prior to Killeen's withdrawing as Diamond D's counsel, and prior to the

Defendants' appeal to the Second Circuit of Judge Curtin's award of a preliminary

injunction, Diamond D filed a motion seeking an award of attorney fees pursuant to 42

U.S.C. § 1988(b) which provides with regard to a civil rights action under § 1983 that

"the court, in its discretion, may allow the prevailing party, other than the United States,

a reasonable attorney's fee as part of the costs. . . ."  Although in *Diamond D II*, Judge

Curtin held that the Eleventh Amendment did not bar Diamond D's civil rights action,

issues of fact regarding the extraordinary circumstances and the bad faith exceptions to

the *Younger* abstention doctrine required the court to abstain from reaching the request

for injunctive relief. *Diamond D II*, 110 F.Supp.2d at 208.  Following a hearing at which

Diamond D was permitted to present evidence as to the extraordinary circumstances

and bad faith exceptions, Judge Curtin, in *Diamond D III*, 142 F.Supp2d 377,

specifically found that the DOL's investigation of the matter was so arbitrary that both

the bad faith and extraordinary circumstances exceptions to the *Younger* abstention

doctrine applied and, thus, the court was not without jurisdiction to consider Diamond

D's request for injunctive relief, which the court then granted, thereby enjoining the

DOL's ongoing administrative proceedings and ordering the DOL to withdraw the

withholding notices. *Diamond D III*, 142 F.Supp.2d at 398-402, 406.  The State

Defendants appealed *Diamond D III* to the Second Circuit Court of Appeals.

While the State Defendants' appeal was pending before the Second Circuit,

Diamond D moved for an award of interim attorney fees as a prevailing party pursuant

to 42 U.S.C. § 1988 and Judge Curtin held Diamond D's motion for interim attorney

fees in abeyance pending the Second Circuit Court of Appeals' decision on appeal of

the court's grant of Diamond D's request for a preliminary injunction.

In support of its motion, Diamond D initially argued that its counsel's efforts both

prior to the commencement of its § 1983 action and in the state administrative

proceedings while the § 1983 action was pending were in furtherance of Diamond D's

federal action and in vindication of its federal constitutional rights.  Diamond D's Reply

at 3.  The State Defendants' argued that no award of attorney fees pursuant to § 1988

should be made while the State Defendants' appeal was pending as Diamond D was

17

not yet a "prevailing party." State Defendants' Memorandum at 5-9. Diamond D urged

the court to make an award of attorney fees pursuant to § 1988, despite the State

Defendants' appeal pending before the Second Circuit, to compensate counsel for work

done prior to the federal civil rights action and in connection with the state

administrative proceedings. Diamond D's Reply at 8-19.

The Second Circuit, in vacating Judge Curtin's Order of January 5, 2001 granting

Diamond D's request for injunctive relief on the basis that no exception to the *Younger*

abstention doctrine applied, stated that, as such, this court was without jurisdiction to

entertain Diamond D's request for injunctive relief. *Diamond D IV*, 282 F.3d at 193.

Accordingly, the *Diamond D III* preliminary injunction was vacated and the matter

remanded for further proceedings on Diamond D's remaining damages claim. *Diamond*

*D IV*, 282 F.3d at 202.

Following the Second Circuit's decision, Killeen, although no longer counsel to

Diamond D, filed additional papers in support of Diamond D's motion for interim

attorney fees, asserting that despite the Second Circuit's decision, Diamond D

remained a "prevailing party" in accordance with 42 U.S.C. § 1988(b) because prior to

the Second Circuit's decision, the DOL had released the withheld funds

Diamond D's Supplemental Reply at 7-10. Killeen also points to the fact that the

Second Circuit did not disturb Judge Curtin's determination that the Eleventh

Amendment did not bar the request for injunctive relief, nor Judge Curtin's order

directing the State Defendants to vacate the DOL's withholding notices. Diamond D's

Supplemental Reply at 7.

As discussed, Discussion, *supra*, at 15, 42 U.S.C. § 1988(b) grants the district

court authority to award attorney's fees to a "prevailing party" in a civil rights action

brought under 42 U.S.C. § 1983. The term "prevailing party" is generally given a

"generous formation" with plaintiffs possibly entitled to attorney's fees "'if they succeed

on any significant issue in litigation which achieves some of the benefit the parties

sought in bringing the suit.'" *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003)

(quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The Supreme Court has,

however, more recently taken "a somewhat more restrictive approach" to this question.

*Roberson, supra*, at 79. In particular, in *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

*Dep't of Health & Human Res.*, 532 U.S. 598 (2001), the Court rejected the "catalyst

theory" whereby a plaintiff in a § 1983 action was considered a "prevailing party" if the

plaintiff "achieves the desired result because the lawsuit brought about a voluntary

change in the defendant's conduct." *Buckhannon Bd., supra*, at 601-03. The Court

instead defined a "prevailing party" as "one who has been awarded some relief by the

court," *id.* at 603 (underlining added), and "that change must also be judicially

sanctioned." *Roberson, supra*, at 79-80.

In the instant case, although Diamond D was a successful party insofar as the

DOL lifted the withholding notices and eventually released the withheld funds, even

assuming, *arguendo*, that such release was a direct result, *i.e.*, "but for", of the civil

rights litigation in this court, the lifting of the DOL's withholding notices and release of

the withheld funds did not occur pursuant to a "judicially sanctioned" directive. Indeed,

the only "judicially sanctioned" directive, Judge Curtin's preliminary injunction, was

vacated by the Second Circuit as being without subject matter jurisdiction. Accordingly,

Diamond D is not entitled to an award of attorney's fees as a prevailing party under 42

19

U.S.C. § 1988(b).  *See Altman v. Bedford Central School District*, 245 F.3d 49, 81-82

(2d Cir. 2001) (reversing § 1983 civil rights plaintiffs' award of attorney's fees under §

1988(b) where Second Circuit also reversed district court's ruling in favor of plaintiffs on

their First Amendment claim).  Furthermore, Diamond D's assertion that the Second

Circuit did not disturb Judge Curtin's determination that the Eleventh Amendment did

not bar the request for injunctive relief, nor Judge Curtin's order directing the State

Defendants to vacate the DOL's withholding notices, Diamond D's Supplemental Reply

at 7, is unavailing as the Second Circuit noted that "[b]ecause we conclude that

*Younger* abstention resolves this case, we do not reach these alternative arguments."

*Diamond D IV*, 282 F.3d at 193 n. 1.  Thus, like Judge Curtin's grant of equitable relief,

the court's Eleventh Amendment and affirmative direction to DOL were also without

jurisdiction.

Diamond D's motion for an award of attorney's fees should therefore be

DENIED.[8]


**B.    Attorney's Charging Lien Pursuant to New York Judiciary Law § 475**

Killeen has moved pursuant to § 475 to determine the amount of an attorney's

charging lien and to enter judgment in the amount of the lien against Diamond D and

DiPizio.  In support of the motion, Killeen stated he no longer maintained a working

---

[8] Because the undersigned is recommending that the motion for an award of attorney's fees
pursuant to § 1988 be denied, the court need not address whether such an award should be made
according to the doctrine of "account stated" or as a matter of *quantum meruit.  See* Killeen Plaintiffs'
Supplemental Reply at 15 (asserting the "account stated" doctrine as an alternative ground for an award
against Diamond D and DiPizio in connection with Diamond D's claim for s 1988 attorney's fees).

attorney-client relationship with Diamond D and, under the circumstances, was unable

to discharge his responsibilities to the court and Diamond D.  Second Killeen

Affirmation ¶ 2.  Killeen further requested that because he had appeared on Diamond

D's behalf in the civil rights action "with the express understanding that I [Killeen] would

be paid [regardless of any specific outcome] for my firm's services at our standard rate,"

and that as the action "has so far produced proceeds in excess of $ 1 million for DiPizio

and Diamond D," Killeen was entitled to a charging lien against such proceeds pursuant

to New York Judiciary Law § 475 in the amount of $ 278,877.87.  Second Killeen

Affirmation ¶ 3 (bracketed text added).  Killeen further stated that the charging lien

sought was without prejudice to Diamond D's pending request for attorneys fees

pursuant to § 1988, presumably to enable Diamond D to recoup such expenses against

Defendants.[9]  *Id.* ¶ 4.

   In opposition to Killeen's motion, DiPizio asserts that he repeatedly advised

Killeen of Diamond D's inability and refusal to pay Killeen legal fees unless the

underlying civil rights action against the DOL was successful and that Killeen's sole

avenue for payment would be pursuant to § 1988.  DiPizio Affirmation ¶ 3.[10]  Greenan

also opposes Killeen's motion, stating that since filing the civil rights action, Killeen,

Fitzgerald and Greenan have accrued more than $ 771,000 in attorney fees which

---

[9] Whether under federal law such disclaimer could avoid disabling Diamond D from doing so is
discussed, *infra*.

[10] DiPizio also asked the court to defer any hearing concerning imposing a charging lien until the
court conducted a hearing as to whether Killeen's withdrawal as counsel of record for Diamond D was for
cause or without cause.  DiPizio Supplemental Affirmation ¶ 2.  Judge Curtin, however, specified in his
Order filed July 15, 2003, 00-CV-335C(F), Doc. No. 191, that Killeen' motion to withdraw as Diamond D's
counsel of record was granted "for good cause shown."  Accordingly, the court need not conduct any
hearing concerning whether Killeen's withdrawal as counsel was for cause or without cause.

remained unpaid, but that Greenan nonetheless opposed Killeen's request to withdraw
as Diamond D's counsel of record because Greenan did not have the "expertise"
necessary to continue to represent Diamond D in this action and Fitzgerald had already
been permitted to withdraw.[11]  Greenan Affirmation ¶¶ 4-6.  In further support of
Killeen's motion to withdraw and for the court to determine the amount of an attorney's
charging lien, Allithea Killeen, Killeen's law partner, averred that she was present at the
initial meeting between Killeen and DiPizio who "explained at length that he had no
money for a retainer with our firm," but that Killeen felt compelled, as a matter of
professional duty, to help DiPizio.  Allithea Killeen Affirmation ¶ 3.  Allithea Killeen
further maintains that, as an inducement to Killeen & Killeen to enter the case, DiPizio
"expressly agreed to pay Killeen & Killeen's fees out of the proceeds of released
monies," *id.* ¶ 2, that DiPizio never said that he would not be personally liable for
attorney fees, *id.* ¶ 4, that she had several conversations with DiPizio regarding his
mounting attorney fees and strongly advised DiPizio "that he needed to approach
settlement of this case with an eye toward retiring his fee obligations to Killeen &
Killeen, as well as to the other attorneys representing him," *id.* ¶ 5, that as time drew
near for the appeal before the Second Circuit she had "at least two lengthy telephone
conversations with Mr. DiPizio regarding his attorney fees and his money damage claim
against the State," *id.* ¶ 8, but that although the withheld funds have since been
released to Diamond D, DiPizio has refused to pay Killeen & Killeen's fees despite

---

[11] Greenan, the court notes, has nevertheless continued representation of Diamond D despite
Killeen's permitted withdrawal.  The extent to which Greenan's stated reason for opposing Killeen's
withdrawal affects his entitlement to any attorney fees due Greenan is not before the court at this time.

written and oral requests. *Id.* ¶ 12.

Section 475 governs attorneys' charging liens in federal courts sitting in New York. *Itar-Tass Russian New Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448-49 (2d Cir. 1998) (citing cases).[12]  As relevant, § 475 provides that

> [f]rom the commencement of an action * * * the attorney who appears for a party has a lien upon his client's cause of action * * * which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The court upon the petition of the client or attorney may determine and enforce the lien.

§ 475 (underlinging added).

"[T]he Second Circuit has 'long recognized that the lien created by section 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts.'" *Itar-Tass Russian News Agency, supra*, at 449 (quoting *In re Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991) and citing other cases).  Further, although an attorney's charging lien belongs only to the attorney of record, *Itar-Tass Russian News Agency, supra*, at 450, that an attorney participated in the legal proceedings at some time as counsel of record is a sufficient predicate for invoking the protection of § 475, despite the attorney's subsequent withdrawal as attorney of record. *Id.* at 451 (attorney's "permitted withdrawal as attorney of record does not affect his entitlement to the statutory lien under Section 475").  "It has long been held that attorneys who

---

[12] Although the Second Circuit has held that federal law, rather than state law, applies to the issue of an attorney's common law <u>retaining</u> lien over a client's papers and property, *Pomerantz v. Schandler*, 704 F.2d 681, 682 (2d Cir. 1983), and has also refused to recognize and enforce an attorney's <u>retaining</u> lien where the action is prosecuted pursuant to a federal statute allowing for a fee shifting provision, like §§ 1983 and 1988, *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991), the court's research reveals no similar federal case law regarding an attorney's <u>charging</u> lien for which enforcement is requested of a district court pursuant to § 475.

terminate their representation for just cause continue to be entitled to enforce their

[charging] liens." *Klein v. Eubank*, 663 N.E.2d 599, 600 (N.Y. 1996).

According to the New York Court of Appeals,

> [u]nder the common law, the attorney was only entitled to a lien upon the judgment, but the scope of the charging lien was extended by statute to give the attorney a lien upon the client's cause of action as well. The lien comes into existence, without notice or filing, upon commencement of the action or proceeding.

*LMWT Realty Corp. v. Davis Agency Inc.*, 649 N.E.2d 1183, 1186 (N.Y. 1995) (citing cases).

"The charging lien was created by the common-law courts as a device to protect an

attorney by 'disabling clients from receiving the fruits of recoveries without paying for

the valuable services by which the recoveries were obtained.'" *LMWT Realty Corp.,*

*supra*, at 1186 (quoting *Goodrich v. McDonald*, 19 N.E. 649, 651 (N.Y. 1889)).

Furthermore, the existence of a federal fee shifting provision, *i.e.*, § 1988, upon which

the plaintiff may rely to recover its attorney's fees in a successful § 1983 action, does

not preempt an attorney's reliance on a retainer agreement to recover payment from a

client should the client not prevail on a subsequent § 1988 motion. *See Uy v. Bronx*

*Municipal Hospital Center*, 182 F.3d 152, 157 (2d Cir. 1999) (observing that even if a

court would be justified in awarding attorney's fees under a fee-shifting statute at an

hourly rate lower than that provided for in a private retainer agreement between the

attorney and client, such judicial determination does not "constitute a limit beyond which

any fee privately agreed to between the attorney and the client is 'excessive.'").

Further, the right to an attorney's charging lien arises when the client's action is

commenced and the attorney is entitled to a statutory lien against the proceeds of the

action. *Cohen v. Grainger, Tesoriero & Bell*, 622 N.E.2d 288, 289 (N.Y. 1993).

Nevertheless, the charging lien, by its terms, "attaches to a verdict, report,

determination, decision, judgment or final order <u>in his client's favor</u>." § 475 (underlining

added). *See Casper v. Lew Lieberbaum & Co., Inc.*, 1999 WL 335334, * 7 (S.D.N.Y.

May 26, 1999) (observing that a § 475 charging lien, by its terms, "attaches to the

client's ultimate recovery in the same case."). Courts have thus refrained from

determining the amount of an attorney's charging lien in cases where, as here, there

has yet to be any "recovery" when an attorney withdraws from the case, and it is not yet

known whether there will be any such recovery as "[a]n attempt to fix the amount of the

[charging] lien at this point may result in the unnecessary utilization of judicial

resources." *Casper, supra*, at * 7.

Insofar as Diamond D maintains that Killeen and his law firm agreed to represent

Diamond D in the § 1983 action on a contingency fee basis, *i.e.*, that Killeen & Killeen

would receive payment only to the extent awarded to Diamond D under § 1988, such

dispute involves issues of fact that can be resolved only after a hearing. *See In re*

*Petition of Rosenman & Colin*, 850 F.2d 57, 60 (2d Cir. 1988) (rejecting client's

contention that she was entitled to a jury in "proceeding to enforce an attorney's

charging lien pursuant to § 475 is essentially a contractual dispute over an attorney's

fee" as such actions "have repeatedly been regarded as equitable in nature so that no

jury right attaches."). However, there is no need to hold a hearing, based on Killeen &

Killeen's § 475 claim, at this time because until and unless Diamond D actually prevails

on its § 1983 action, there is no recovery "in [Diamond D's] favor" to which the charging

lien can attach. § 475; *Casper, supra*, at *7. Moreover, there are three possible

25

scenarios for the conclusion of the § 1983 action which will either moot the need for a hearing, or will dictate what needs to be determined at the hearing.

In the first scenario, Diamond D ultimately succeeds on its § 1983 action for damages and on its subsequent § 1988 request for an award of attorney's fees. Under these circumstances, Killeen & Killeen's § 475 attorney's charging lien would attach to the verdict in the § 1983 action, as well as to the § 1988 attorney's fees awarded and no hearing would be necessary provided Diamond D is awarded sufficient attorney fees to satisfy Killeen & Killeen's outstanding bill for legal services rendered in connection with the § 1983 action. If, however, the amount of attorney's fees awarded Diamond D pursuant to § 1983 is less than the amount Killeen & Killeen seeks to recover from Diamond D, then a hearing will be necessary to determine whether Killeen & Killeen agreed that the amount of its attorney's fees recovered pursuant to § 1988 was intended as Killeen & Killeen's exclusive basis of compensation, or whether Killeen & Killeen can enforce a § 475 attorney's charging lien in the amount by which the fees awarded under § 1988 falls short of the amount to which Killeen & Killeen would be entitled according to the alleged verbal retainer agreement.

In the second scenario, Diamond D ultimately succeeds on its § 1983 action, but not on its subsequent § 1988 request for an award of attorney's fees. Here, there would be a verdict in Diamond D's favor to which Killeen & Killeen's attorney charging lien would attach, but because no money would be awarded under § 1988 out of which Diamond D could pay Killeen & Killeen, a hearing would be required to determine whether Diamond D agreed to pay attorney's fees regardless of its success on the § 1988 request, or whether Killeen & Killeen agreed to represent Diamond D in the §

26

1983 action on a "contingency" basis, *i.e.*, that Killeen & Killeen volunteered to

represent Diamond D, intending that Killeen & Killeen's legal services would be a gift,

*i.e.*, *pro bono*, to Diamond D if Diamond D was not ultimately awarded attorney's fees

pursuant to § 1988.  *See Uy, supra*, at 157 ("The court's determination of a reasonable

fee to be imposed on the losing party under a fee shifting statute [§ 1988] does not

constitute a limit beyond which any fee privately agreed to between attorney and client

is 'excessive.'").

　　　Under the third scenario, Diamond D does not succeed in the § 1983 action and,

thus, cannot be awarded attorney's fees pursuant to § 1988.  In such case, there will be

no "verdict, report, determination, decision, judgment or final order" in Diamond D's

favor to which Killeen & Killeen's § 475 attorney's charging lien can attach and Killeen &

Killeen's recovery of its fee will be limited to a claim for *quantum meruit* relief on a

quasi-contract, a claim over which the court would now have ancillary jurisdiction if

brought in the § 1983 action.[13]  *See Tancredi v. Metropolitan Life Ins. Co.*, __ F.3d __,

2004 WL 1773237, *4 (2d Cir. Aug. 9, 2004) (observing that whenever a district court

has federal jurisdiction over a case, the district court also retains ancillary jurisdiction

after dismissal of the case to adjudicate collateral matters such as attorneys fees

brought by motion); Discussion, *infra*, at 35.  Significantly, the first issue to be

addressed in considering such a claim will be the same as in the second scenario

discussed above, *i.e.*, whether Diamond D agreed to pay Killeen & Killeen's attorney's

---

[13] As discussed, *infra*, at 31-35, Killeen & Killeen has not moved in the § 1983 action for attorney's fees based on quasi-contract but, rather, has commenced a separate action against DiPizio and Diamond D over which this court is without jurisdiction.

fees only if Diamond D ultimately was awarded attorney's fees pursuant to § 1988.

Because, as discussed in connection with the first scenario, an award to Diamond D of attorney's fees pursuant to § 1988 in an amount sufficient to satisfy Killen & Killeen's unpaid bill for legal services rendered in the § 1983 action would moot the need for any hearing, holding a hearing before the conclusion of the § 1983 action "may result in the unnecessary utilization of judicial resources." *Caper, supra,* at * 7. Accordingly,  Killeen's motion for the court to determine the amount of and to enforce a § 475 charging lien should be DENIED without prejudice to renewal should Diamond D ultimately enjoy such success in the § 1983 action to which an attorney charging lien could, under § 475, attach.

Should a hearing ultimately be held to determine the amount of an attorney's charging lien for Killeen & Killeen, it has long been the law in New York that an attorney's compensation for his services "is governed by agreement, express or implied, which is not restrained by law." *Peri v. New York Cent. & H.R.R. Co.,* 46 N.E. 849, 850 (N.Y. 1897) (citing predecessor statute to § 475).  While courts within New York have limited the amount of an attorney's charging lien "to the terms of the retainer agreement and the attorney's taxable costs," *Aetna Insurance Company v. Springsteen,* 432 N.Y.S.2d 11, 13 (App. Div. 2d Dep't 1980), the New York Court of Appeals has held that absent an express agreement between the attorney and client to the contrary, "a discharged attorney may recover [under a § 475 lien] the 'fair and reasonable value' of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit.*" *Cohen, supra,* at 290 (quoting *Matter of Montgomery,* 6 N.E.2d 40, 41 (N.Y. 1936); *See Teichner v. W & J Holsteins, Inc.,* 478 N.E.2d 177, 178-

79 (N.Y. 1985) (amount of attorney's compensation pursuant to either a retaining lien or a charging lien "must be determined on a *quantum meruit* basis).

In the instant case, although DiPizio does not dispute that Killeen prepared, filed and litigated Diamond D's civil rights action until Killeen's motion to withdraw was granted, Killeen never had DiPizio execute any retainer on Diamond D's behalf. Nor did Killeen ever provide DiPizio or Diamond D with a written letter of engagement before commencing representation of Diamond D.[14] As such, Killeen's charging lien, if any, would be computed on a *quantum meruit* basis. Further, the *quantum meruit* amount of Killeen's compensation could be calculated as of the date Killeen withdrew as Diamond D's attorney, *Universal Acupuncture Pain Services v. Quadrino v. Schwartz, P.C.,* 370 F.3d 259, 263 (2d Cir. 2004), but for the existence of an issue of fact as to whether Killeen agreed to represent Diamond D solely on a contingency fee basis, *i.e.,* whether payment of Killeen's fee was independent of Diamond D's being a "prevailing party" under § 1988 (or not) and, as such, entitled to an award of attorney's fees based on a § 475 charging lien. However, as discussed, *supra,* the court would not need to conduct an evidentiary hearing on this issue to resolve the threshold question of whether Killeen and his law firm agreed to represent Diamond D on a contingent fee basis, *i.e.,* that Diamond D would pay Killeen and his law firm for legal services rendered in connection

---

[14] The court notes that had Killeen and his law firm commenced representation of Diamond D after March 4, 2002, the absence of a retainer agreement or a letter of engagement might prevent Killeen and the law firm from recovering any attorney fees. N.Y. Comp. Codes R. & Regs. tit. 22, § 1215.1 (a), New York Rules of Court (requiring any attorney who undertakes to represent a client to provide the client with either a written letter of engagement or retainer agreement either before commencing the representation or within a reasonable time thereafter). *See Feder, Goldstein, Tanenbaum & D'Errico v. Ronan,* 761 N.Y.S.2d 463 (Dist. Ct., Nassau Co., 2003) (attorney's failure to provide client with written letter of engagement or written retainer agreement precluded him from recovering fees, including under *quantum meruit,* for legal services allegedly performed on client's behalf).

with the § 1983 action if Diamond D ultimately prevailed on the § 1983 action as well on a subsequent motion for attorney's fees pursuant to § 1988 and was awarded as attorney's fees an amount sufficient to satisfy Killeen & Killeen's outstanding bill.[15]

Killeen's motion for the court to determine the amount of an and enforce an attorney's § 475 charging lien therefore should be DENIED without prejudice to renewal in the event that Diamond D may obtain in its favor in the § 1983 action, "a verdict, report, determination, decision, judgment or final order" to which such lien could attach under § 475.

## C.    Motion to Strike

Killeen moved to strike the Greenan Affirmation submitted in opposition to Killeen's motion for an attorney charging lien asserting that Greenan is purporting to act both as a fact witness and as an advocate for Diamond D in violation of Disciplinary Rule 5-102. Motion to Strike at 2. Greenan does not deny that he has become a fact witness as to the nature of Killeen's "agreement or lack thereof regarding fees with the client [Diamond D] . . . . [and that] I [Greenan] diagree with his [Killeen's] representations as to the nature of his [Killeen's] fee arrangement and disagree even more with his [Killeen's] conduct since July 2002 while an attorney of record in this

---

[15] The court notes that as the § 1983 action remains pending before the court, nothing prevents Killeen and his law firm from making a separate request, within the court's jurisdiction based on the § 1983 action, for an award of attorney fees on the theory of quasi-contract. As such a motion would not be dependent on the outcome of the § 1983 action, a hearing on such a request could then be scheduled before the conclusion of the § 1983 action. Success on such motion would result in an award which Killeen & Killeen could then enforce against Diamond D's assets irrespective of the § 1983 action and any subsequent § 1988 request. See Uly, supra.

case." Greenan Affirmation ¶ 8.[16] Furthermore, Greenan challenges the motion to strike as to whether Killeen had established good cause in support of Killeen's request for permission to withdraw as Diamond D's counsel of record to Diamond D and maintains that such motion does not advance Killeen's interests in obtaining payment of Killeen's fees but, rather, will "needlessly embroil the Court and counsel and the client in a discussion which currently serves no productive purpose." Greenan Reply Affirmation ¶ 4.[17]

As the undersigned is recommending that Killeen's motion for an attorney's charging lien be denied without prejudice to renewal upon Diamond D obtaining some success in the § 1983 as required for such lien to attach under § 475, Killeen's motion to strike (00-CV-335C(F), Doc. No. 188) is DISMISSED as moot and without prejudice to renewing should Killeen's motion for an attorney's charging lien also be renewed.

2.    ***Quantum Meruit* Action**

While the § 1983 action remains pending before the court, Killeen and his law firm, Killeen & Killeen commenced the *quantum meruit* action, separate from the § 1983 action, seeking to recover from DiPizio the attorney fees Killeen & Killeen accrued representing Diamond D in the § 1983 action on a quasi-contract theory.

---

[16] The court need not resolve the apparent inconsistency between Greenan's negative assessment of Killeen's representation of Diamond D and Greenan's assertion in opposition to Killeen's withdrawal that Greenan lacked the necessary "expertise" to prosecute Diamond D's claims against Defendants.

[17] How resolving the enforceability of a statutory attorney charging lien against the funds released from the funds withheld by the DOL "serves no productive purpose" in accordance with the court's statutory and federal common law duty to resolve such claims is not further explained.

A.    **Motion to Dismiss**

DiPizio has moved to dismiss the Complaint filed in the *quantum meruit* action,

03-CV-377C(F), based on improper service of process and lack of jurisdiction.

According to DiPizio, the affidavit of service filed in the *quantum meruit* action indicates

that the summons and complaint were filed on "Jane Doe" at DiPizio's place of

business.  DiPizio Affirmation Supporting Motion to Dismiss ¶ 2.  DiPizio further

maintains that this court is without supplemental jurisdiction over the *quantum meruit*

action because the court had yet to determine whether to permit Killeen to withdraw as

counsel to Diamond D in the § 1983 action, and DiPizio never agreed to be personally

and individually represented by Killeen in the § 1983 action.  DiPizio Affirmation

Supporting Motion to Dismiss ¶¶ 4-15.


1.    **Service of Process**

DiPizio maintains that service of process in the *quantum meruit* action was not

proper because the return of service ("Return of Service")[18] indicates that the summons

and Complaint were filed on "Jane Doe" at DiPizio's place of business.  DiPizio

Affirmation Supporting Motion to Dismiss ¶ 2.  Killeen explains that after process server

William F. Brown ("Brown"), made three unsuccessful attempts to serve DiPizio at his

residence including once on May 15, 2003 and twice on May 17, 2003, Brown made

service on May 19, 2003 at Diamond D's headquarters at 5270 Transit Road, Depew,

by serving the summons and Complaint on a female employee who refused to provide

---

[18] Copies of the Return of Service are attached as Exhibit B to the DiPizio Affirmation Supporting Motion to Dismiss and as Exhibit A to the Memorandum in Support of Consolidation.

her name or to say when DiPizio would be available to accept service.  Memorandum in

Support of Consolidation at 2-3.  A copy of the Complaint was mailed to DiPizio[19] on

May 21, 2003.  Memorandum in Support of Consolidation at 3.

The Return of Service indicates that Brown attempted to effect service on DiPizio

at DiPizio's residence at 217 Strassmer Road, Depew, New York on May 15, 2003 at

6:30 P.M., and on May 17, 2003 at 11:00 A.M. and 3:00 P.M., but that no one answered the

door.  Return of Service.  Accordingly, at 11:55 A.M. on May 19, 2003, Brown left the

papers at DiPizio's "usual place of business" at 5270 Transit Road, Depew, New York

with "Jane Doe," a woman who would identify herself only as DiPizio's employee and

who refused to tell Brown when DiPizio would be available.  Return of Service.  "Jane

Doe" was described as "40 years old, 130 lbs, 5'7", gray-bld. hair, white skin, blue

eyes."  Return of Service.  The Return of Service further indicates that a copy of the

summons and Complaint was mailed to DiPizio on May 21, 2003.  Return of Service.

Fed.R.Civ.P. 4(e) provides that with regard to an action that may be brought in

the state courts of general jurisdiction service of process may be made upon any

individual within a judicial district of the United States "pursuant to the law of the state in

which the district court is located, or in which service is effected . . . ."  Fed.R.Civ.P.

4(e)(1).  Accordingly, as this court, where the *quantum meruit* action was filed, is

located in New York, and as service of process was effected in New York, it is New

York law that governs such service of process.

---

[19] The record does not indicate whether the copy of the Complaint was mailed to DiPizio at his last known residence or at his actual place of employment.  That the process server, Brown, only mentions having two addresses for DiPizio, including DiPizio's last known residence and actual place of business, implies that the copy of the Complaint was mailed either to DiPizio's last know residence or his actual place of business.  Significantly, DiPizio does not argue otherwise.

As relevant, New York Civil Practice Law and Rules § 308 (McKinney 2001) ("§ 308") provides that personal service upon a natural person may be made

> 1. by delivering the summons within the state to the person to be served; or
> 2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

§ 308.1 and 2.

Here, the Return of Service establishes that the papers were left at DiPizio's place of business with a 40 year-old female employee and a copy was subsequently mailed to DiPizio. DiPizio does not argue otherwise, nor does he assert that he never actually received the papers served on May 19, 2003. Furthermore, nothing within New York's personal service statute, § 308, indicates that the failure to obtain the name of the individual with whom the summons is left invalidates the service. DiPizio does not dispute that a copy of the process was mailed to him at either his last known residence or to his actual place of business. *See* Discussion, *supra* at 28 n. 17. Accordingly, personal service on DiPizio was proper under § 308.2 and DiPizio's motion to dismiss the Complaint filed in the *quantum meruit* action should, on this ground, be DENIED.

### 2.   Jurisdiction

DiPizio asserts that this court is without supplemental jurisdiction over the *quantum meruit* action because when the *quantum meruit* action was filed, the court had yet to determine whether to permit Killeen to withdraw as counsel to Diamond D in the § 1983 action, and DiPizio never agreed to be personally and individually

34

represented by Killeen in the § 1983 action.[20] DiPizio Affirmation Supporting Motion to Dismiss ¶¶ 4-15. Killeen argues in opposition that the nature of the quantum *meruit* *action*, *i.e.*, an action to recover attorney fees incurred in connection with Killeen's representation of Diamond D in the § 1983 action, renders the *quantum meruit* action so related to the § 1983 action as to form one case or controversy, thereby subjecting the *quantum meruit* action to the supplemental jurisdiction of this court under 28 U.S.C. § 1367. Memorandum in Support of Consolidation at 5-11.

The ancillary jurisdiction doctrine "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 378 (1994). A district court may exercise such ancillary jurisdiction over "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). The ancillary jurisdiction doctrine does not, however, vest the court with jurisdiction to entertain related claims brought in a separate action for which there is no independent basis for federal jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349, 355 (1996) ("In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction). Rather, the Supreme Court has directed that the use of ancillary jurisdiction in subsequent proceedings be "reserved . . . for the exercise of a federal court's inherent power to enforce its judgments." *Peacock, supra*, at 356.

---

[20] Such assertion, even if true, is irrelevant as DiPizio, as an individual, is not a party to the § 1983 action.

Here, the court may have exercised ancillary jurisdiction over Killeen's *quantum meruit* claim had it been interposed as a motion or petition within the § 1983 action, as well as over DiPizio had he been impleaded as a defendant pursuant to a claim to pierce Diamond D's corporate veil.  *See Tancredi, supra,* at *4.  Further, the court's research reveals nothing authorizing the court to convert the *quantum meruit* action into a motion for an award of attorney's fees within the § 1983 action and to so convert the *quantum meruit* action would raise significant due process issues.  Killeen's reliance on 28 U.S.C. § 1367 for ancillary jurisdiction over the separate *quantum meruit* action is, therefore, improper.

Accordingly, the court's exercise of ancillary jurisdiction over the *quantum meruit* action would be improper and DiPizio's motion to dismiss the Complaint filed in the *quantum meruit* action for lack of jurisdiction should be GRANTED.  The Clerk of the Court should be directed to close Case No. 03-CV-377C(F).

### B.   Motion to Consolidate

Killeen filed a cross-motion to consolidate the § 1983 action, 00-CV-335C(F), with the *quantum meruit* action, 03-CV-377C(F), given that the legal services at issue and for which Killeen and the law firm seek an award are the same in both actions. Killeen's Memorandum at 2, 11-12.  DiPizio has not opposed the motion.

As the court is recommending granting DiPizio's motion to dismiss for lack of jurisdiction, the motion to consolidate is DISMISSED as moot.[21]

---

[21] The court notes that consolidation may not be used as a tool to create ancillary jurisdiction over an action for which there is no independent basis for federal jurisdiction.  *See Russo v. City of Hartford,*

36

## **CONCLUSION**

Based on the foregoing, Plaintiff Diamond D's motion for an interim award of
attorney's fees pursuant to § 1988 (00-CV-335C(F), Doc. No. 102), should be DENIED;
Killeen's motion for the court to determine the amount of an attorney's charging lien
pursuant to New York Judiciary Law § 475 (00-CV-335C(F), Doc. No. 173), should be
DENIED without prejudice to renewal should  Diamond D ultimately enjoy some
success on the § 1983 action to which such a lien could attach and subject to an
evidentiary hearing to determine whether Killeen & Killeen's fee was contingent on such
success; Killeen's motion to strike the affidavit of Timothy J. Greenan, Esq. (00-CV-
335C(F), Doc. No. 188), is DISMISSED as moot; Defendant DiPizio's motion to dismiss
(03-CV-377C(F), Doc. No. 3) should be DENIED in part and GRANTED in part; and
Plaintiffs Killeen and Killeen & Killeen's motion to consolidate (03-CV-377C(F), Doc. No.
6) is DISMISSED as moot.  The Clerk of the Court should be directed to close Case No.
03-CV-377C(F).

---

158 F.Supp.2d 214, 225 (D.Conn. 2001) (although consolidation of cases creates a single unit for litigation
purposes, consolidation does not result in a single case for jurisdictional purposes) (citing *Cella v. Togum
Constructeur Ensemleier en Industrie Alimentaire*, 173 F.3d 909, 912 (3d Cir.1999)).

SO ORDERED as to Killeen's motion
to strike the affidavit of Timothy J. Greenan
(00-CV-335C(F), Doc. No. 188), and Killeen
and Killeen & Killeen's motion to consolidate
(03-CV-377C(F), Doc. No. 6),

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


                    Respectfully submitted as to Diamond D's
                    motion for an interim award of attorney's fees,
                    (00-CV-335C(F), Doc. No. 102), Killeen's
                    motion for the court to determine the amount of
                    and enforce an attorney's charging lien (00-
                    CV-335C(F), Doc. No. 173), and DiPizio's
                    motion to dismiss (03-CV-377C(F), Doc. No.
                    3),

                    _____
                    LESLIE G. FOSCHIO
                    UNITED STATES MAGISTRATE JUDGE

DATED:      August 20, 2004
            Buffalo, New York

38

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     August 20, 2004
               Buffalo, New York